843 A.2d 1223

**In re CANVASS OF ABSENTEE BALLOTS OF NOV. 4, 2003 GENERAL ELECTION.**

**Appeal of John Pierce, Thomas Stepnick and Susan Gantman and Susan Gantman for Superior Court, Inc.**

Supreme Court of Pennsylvania.

Submitted Jan. 14, 2004.

Decided March 8, 2004.

232

---

Ronald Lee Hicks, David James Porter, Pittsburgh, Lawrence J. Tabas, Philadelphia, for John Pierce, et al.

Lazar Melton Palnick, Clifford B. Levine, Pittsburgh, for Democratic State Committee of PA.

Allan Joseph Opsitnick, Pittsburgh, Charles P. McCullough, for Allegheny County Dept. of Elections.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Justice CASTILLE.

The issue on this appeal is whether non-disabled absentee voters may have third persons hand-deliver their ballots to the Allegheny County Board of Elections under Section 3146.6(a) of the Election Code, 25 P.S. § 3146.6(a), where the Board of Elections indicated that this practice was permitted. The Commonwealth Court affirmed the trial court and held that absentee ballots delivered by third persons were valid under these circumstances. For the reasons that follow, we hold that Section 3146.6(a)'s "in person" delivery requirement is mandatory, and that absentee ballots delivered in violation of the provision are invalid, notwithstanding the Board's errone-ous instructions to the contrary. Accordingly, we reverse.

This appeal arises from the Board's decision to void seven-ty-four absentee ballots cast in the November 4, 2003 general election. Fifty-six of the ballots were deemed to be invalid absentee ballots. An additional eighteen ballots were deemed to be invalid because two potentially problematic absentee ballots were inadvertently commingled with sixteen valid bal-lots, so that it was no longer possible to tell which two of the eighteen were disputable.

Appellants are John Pierce, a Republican candidate for Allegheny County Treasurer, Thomas Stepnick, a Republican candidate for Allegheny County Register of Wills, Susan Gantman, a Republican candidate for the Pennsylvania Superi-or Court, and her Campaign Committee, Susan Gantman for Superior Court, Inc. Appellees are John Driscoll, a Democratic candidate for the Superior Court, Carol Krupski, M.D., an Allegheny County voter whose absentee ballot was disallowed,

and the Democratic State Committee of Pennsylvania. The parties inexplicably do not discuss how, or if, our decision will affect the ultimate outcome of any of the contested elections. We do note that appellant Pierce decisively lost the County Treasurer election by 60,307 votes, while appellant Stepnick decisively lost the Register of Wills election by 77,472 votes.[1] The statewide race for Superior Court was far closer, however, with appellant Gantman defeating appellee Driscoll by twenty-eight votes out of more than two million two hundred fifty-thousand cast.[2] Although it is again not clear from the pleadings, we presume that these certified results do not include the ballots at issue here, as this Court stayed the Commonwealth Court's order pending our resolution of the appeal. Moreover, it is not apparent from the pleadings, or the sparse record that exists, whether the ballots at issue, if counted, would have had an effect upon the outcome of the Superior Court election.[3]

The fifty-six absentee ballots at issue were hand-delivered to the Allegheny County Elections Board by third persons on behalf of non-disabled voters. Section 3146.6(a) of the Election Code unequivocally provides, *inter alia*, that absentee

1. In the race for Treasurer, appellant Pierce received 115,245 votes, while his Democratic opponent received 180,561 votes. Appellant Stepnick received 105,065 votes against his Democratic opponent for Register of Wills, who received 183,537 votes.

2. In the contested Superior Court election, appellant Gantman received 1,125,543 votes, while appellee Driscoll received 1,125,515 votes.

3. Not surprisingly, given that the parties have not addressed the effect our decision could have on the outcome of the election, no party has suggested that the issue before this Court has been rendered moot. At the Board of Elections hearing, appellants Pierce and Stepnick averred that the matter was not moot, even though they had decisively lost their respective elections, because a federal district court had granted their request for a preliminary injunction on the basis of their status as voters, rather than as candidates. No similar argument has been forwarded here. In any event, we deem the issue regarding third-party deliveries of absentee ballots not to be moot since it is an important issue, of general concern beyond this election, which is capable of repetition and of escaping review. *See Legal Capital, LLC, v. Medical Professional Liability Catastrophe Loss Fund*, 561 Pa. 336, 750 A.2d 299 (2000).

ballots must be delivered by mail or in person to the Board of Elections:

(a) At any time after receiving an official absentee ballot, but on or before five o'clock P.M. on the Friday prior to the primary or election, the elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Absentee Ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and **the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election**. . . .

25 P.S. § 3146.6(a) (emphasis added). Although the Election Code does not provide for third-party deliveries of absentee ballots, the Allegheny County Elections Board apparently has allowed third-party deliveries of absentee ballots in past elections. On October 10, 2003, with an eye to the upcoming November 4, 2003 election, the Republican Committee submitted a letter to the Board objecting to this practice and requesting that it strictly construe the "in person" delivery requirement set forth in Section 3146.6(a). In response, on October 22, 2003, the acting Chairman of the Board of Elections, the Honorable James McGregor of the Court of Common Pleas of Allegheny County, directed the Elections Division to refuse absentee ballots delivered by third parties. This policy was strictly enforced between October 22, 2003, and October 27, 2003.

Following a public hearing to reconsider the chairman's decision, however, the Board of Elections reversed course and decided to accept third-party deliveries of absentee ballots. On October 27, 2003, the Board issued a directive indicating

the change in voting procedure; under the new procedure any person delivering another person's absentee ballot would be required to show photo identification and sign a form certifying that he was authorized by the voter to deliver the ballot and that the ballot had not been tampered with. The record indicates that, in addition to placing a poster on the Elections Division door, the Board published notice of the policy change in local newspapers. Allegheny County residents who applied to vote absentee in the November 4, 2003 election, however, received a package that included pre-printed instructions prepared by the Pennsylvania Secretary of State which followed the language of the Election Code:

> Sign and print your name and the date beneath the "Absentee Elector's Declaration" on the reverse side of the Return Envelope and **mail or deliver in person so that it reaches the Board of Elections** office prior to the ballot deadline of 5:00 p.m., Friday, October 31, 2003.

By October 31, 2003—the deadline for receiving absentee ballots—the Elections Division in Allegheny County had received approximately 937 hand-delivered ballots.[4]

On October 31, 2003, appellants Pierce and Stepnick sought a temporary restraining order/preliminary injunction in the United States District Court for the Western District of Pennsylvania, alleging, *inter alia,* that the Board of Elections had violated the Equal Protection Clause by failing to enforce the "in person" delivery requirement of Section 3146.6(a) of the Election Code. After an emergency hearing, the court granted injunctive relief to "preserve the rights of voters to challenge the absentee ballots consistent with the procedures set forth in the election code." Federal District Court slip op. at 32.[5] In granting the injunction, the court abstained from interpreting the unsettled question of whether Section

4. Appellant states that the number is 937, while appellee and the trial court state that the number is 936. The Commonwealth Court states both figures. The order of the federal district court specified that 937 hand-delivered ballots were to be set aside. The discrepancy is irrelevant here and for ease of reference we choose the higher number.

5. The federal court issued a temporary restraining order on October 31, 2003 and continued the order on November 4, 2003.

3146.6(a) is mandatory, but reasoned that appellants' equal protection claim would have a reasonable likelihood of success on the merits because if state courts approve Allegheny County's construction of the provision, disparate statewide policies would prevail and that, in turn, would result in unconstitutional vote dilution.[6] Accordingly, the federal district court deemed the 937 hand-delivered absentee ballots "challenged" under Pennsylvania law and ordered that the ballots be set aside so that the challenges could be considered by the Board under Section 3146.8(e) of the Election Code.

On November 14, 2003, ten days after the General Election, the Board held a hearing to consider the challenges of appellants Pierce and Stepnick. Prior to the hearing, appellants withdrew challenges to 487 hand-delivered ballots, which included all hand-delivered ballots of voters who had identified themselves on their absentee ballot applications as having a physical disability or illness.[7] Their remaining challenges concerned fifty-two absentee ballots that had been hand-delivered by third parties on behalf of absentee voters under the procedure established by the Board of Elections on October 27, 2003—*i.e.*, a signed form certifying that the third party was authorized by the voter to deliver the absentee ballot, etc.—and more than 318 additional hand-delivered absentee ballots that may or may not have been delivered by third parties.[8] After a hearing, the Board determined that a total of fifty-six absentee ballots had been hand-delivered by third persons for non-disabled voters, and that these ballots were therefore invalid. These fifty-six ballots included the fifty-two

6. The court found that Allegheny County's standard for counting absentee votes under Section 3146.6(a) differed from that of at least one other county: *i.e.*, Allegheny County allows third-party delivery of absentee ballots, but Philadelphia County does not.

7. Appellants withdrew approximately forty-three additional challenges at the hearing. However, there is yet another unexplained discrepancy as to the total number of withdrawn challenges.

8. Once again, there are slight discrepancies among the parties and the lower courts as to the actual numbers involved. At the November 11, 2003 Board of Elections hearing, appellants introduced Challenger's Exhibit 7, which listed 318 challenged hand-delivered ballots that may or may not have been delivered by third-persons. For the purposes of review, we accept that number.

absentee ballots that had been delivered in accordance with the Board's October 27, 2003 procedure, and four additional absentee ballots that had been completed prior to October 27 by voters who testified that their ballots had been delivered by third parties.

The Board of Elections also determined that two hand-delivered ballots that the federal district court had ordered set aside had been inadvertently opened and commingled with a group of sixteen valid ballots, and thus *sua sponte* ruled that all eighteen "tainted" ballots were invalid. The Board rejected a challenge concerning a seventy-fifth absentee ballot, that of a county employee, Ronald Rydzak, who had delivered his ballot through the county's inter-office delivery system. Thus, all together, the Board ruled that seventy-four absentee ballots were invalid and could not be counted.

Pierce and Stepnick filed a petition for review with the trial court, challenging the Board of Elections' decision regarding the absentee ballot of Rydzak. Appellee Democratic State Committee of Pennsylvania filed a cross-appeal, seeking reversal of the Board's decision that had invalidated the seventy-four absentee ballots. Appellees Driscoll and Krupski filed an untimely joint petition to intervene. Appellants Gantman and Susan Gantman for Superior Court, Inc., also filed a petition to intervene.

The trial court, per the Honorable Joseph James, reversed the Board of Elections' decision invalidating the seventy-four absentee ballots.[9] The trial court observed that the right to vote is a treasured prerogative of citizenship, and that a court should avoid construing a statute to disenfranchise a voter if the law is reasonably susceptible of any other meaning. Then, without construing the governing statute, the trial court concluded that fifty-four absentee ballots should not have been disqualified because those voters had followed the Board of Elections' October 27, 2003 directive for delivering absentee

9. The trial court also granted the intervention petitions and overruled appellants Pierce and Stepnick's preliminary objections challenging the standing of the Democratic State Committee of Pennsylvania.

ballots via third persons.[10] The trial court further reasoned that, because these fifty-four absentee ballots should be counted, the Board also erred in dismissing the eighteen ballots that included two inadvertently commingled hand-delivered ballots. Further, the trial court concluded that the Board should not have disenfranchised the four voters who had attended the public hearing and testified that their absentee ballots had been delivered by third parties. Citing *DiPietrae v. City of Philadelphia*, 666 A.2d 1132, 1135 (Pa.Cmwlth.1995), which held that the Election Code does not expressly prohibit agents from assisting disabled voters in returning completed absentee ballots, the trial court reasoned that the same logic should apply to these four voters who, "[f]or their efforts in good citizenship and candor" had been "rewarded with disenfranchisement." Trial Court slip op. at 6. Thus, the trial court concluded that all of the absentee ballots that had been invalidated by the Board should be counted.[11]

On further appeal, the Commonwealth Court, sitting *en banc*, affirmed the trial court's decision regarding the validity of the seventy-four absentee ballots. The majority opinion by the Honorable Dan Pellegrini concluded that voters were entitled to rely upon the Board of Elections' instructions, notwithstanding that those instructions violated the plain language of the Election Code. The majority reasoned that this case was analogous to this Court's decision in *Union Electric Corporation v. Board of Property Assessment, Appeals & Review of Allegheny County*, 560 Pa. 481, 746 A.2d 581 (2000), where a party had relied upon a tax board's improper extension of a statutory appeal deadline. The trial court there quashed the appeal as untimely and the Commonwealth Court affirmed. This Court reversed and held that an appeal *nunc pro tunc* was appropriate because there was a breakdown in the court's operations through a default of its officers. The

**10.** Here again, we note a discrepancy. The Board of Elections actually found that fifty-two absentee ballots had been hand-delivered by third persons in accordance with its October 27, 2003 directive.

**11.** The trial court affirmed the Board of Elections' decision, in so far as it permitted Rydzak's absentee ballot to be counted.

Commonwealth Court majority *sub judice* concluded that the same principle applied to defeat the statutory mandate here:

> when an administrative body acts negligently, improperly or in a misleading way (unintentionally or otherwise), there is a breakdown in the agency's operations, and when actions are taken by individuals based on the administrative body's acts, those individuals cannot be held responsible.

*In re Canvass of Absentee Ballots of November 4, 2003 General Election,* 839 A.2d 451, 459 (Pa.Cmwlth.2003) (en banc). Conceding that the Board's October 27, 2003 directive had ignored Section 3146.6(a), the majority nonetheless concluded that "it is more important to protect the interest of the voters by not disenfranchising them than to adhere to the strict language of the statute under these circumstances." *Id.* at 460. Thus, the majority determined that the seventy-four ballots should be counted because the Board had misled absentee voters by first allowing third-party delivery of absentee ballots in violation of Section 3146.6(a) of the Election Code, then changing its policy and prohibiting third-party delivery of absentee ballots, and finally changing its policy back again. However, the majority further concluded that Rydzak's absentee ballot, which was delivered through the county's inter-office delivery system, should not be counted because "the statute specifically requires that an absentee ballot be delivered [in person] to the Elections Board and he was not mistakenly informed that he could do otherwise." *Id.*

Judge Bonnie Leadbetter filed a dissenting opinion in which she noted that the majority's decision was contrary to its own precedent, which held that " 'violations of substantive provisions of the Code cannot be overlooked on the pretext of pursuing a liberal construction.' " *Canvass of Absentee Ballots,* 839 A.2d at 461 (Leadbetter, J., dissenting) (quoting *In re April 10, 1984 Election of East Whiteland Township, Chester County,* 85 Pa.Cmwlth. 594, 483 A.2d 1033, 1036 (1984)). Because the Board of Elections' procedure was not only contrary to the Election Code but also contrary to the explicit written directions sent with the absentee ballots, Judge Leadbetter concluded that any reliance by the voters was neither

reasonable nor compelling. Moreover, Judge Leadbetter challenged what she termed the majority's "estoppel doctrine," which, she maintained, "[gave] *carte blanche* to local election boards to establish whatever rules they choose, even where those rules violate explicit directives of the Election Code." 839 A.2d. at 462. Such a patchwork of different rules from county to county, Judge Leadbetter concluded, would implicate equal protection concerns.

Judge Robert Simpson filed a separate dissenting opinion. Judge Simpson agreed with the majority's resolution of the substantive issue, but concluded that the matter was not properly before the court because the Democratic State Committee did not have standing. Specifically, Judge Simpson concluded that a political party is not a "person aggrieved" under the Election Code. Thus, because Driscoll and Krupski had not timely filed an appeal, no appeal was timely filed by a person aggrieved.

This Court granted allocatur to consider two issues: (1) whether absentee ballots delivered by third persons on behalf of non-disabled voters are invalid under Section 3146.6 of the Election Code; and (2) whether counting the ballots which were so delivered by third persons would violate the Equal Protection Clause of the Fourteenth Amendment. These are issues of first impression. As these are questions of law, our review is plenary. *Commonwealth v. Gilmour Manufacturing Co.*, 573 Pa. 143, 822 A.2d 676, 679 (2003); *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

Turning first to the question of whether non-disabled voter absentee ballots delivered by third persons are invalid under Section 3146.6 of the Election Code, we note that the polestar of statutory construction is to determine the intent of the General Assembly. 1 Pa.C.S. § 1921(a) (court's sole objective in construing or interpreting a statute remains to "ascertain and effectuate the intention of the General Assembly"); *Hannaberry HVAC v. Workers' Compensation Appeal Bd. (Snyder, Jr.)*, 834 A.2d 524, 531 (Pa.2003). "Generally

speaking, the best indication of legislative intent is the plain language of a statute." *Gilmour Manufacturing*, 822 A.2d at 679. Furthermore, in construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." *Id.,* (quoting 1 Pa.C.S.1903). The Act further provides that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *see also Scheipe v. Orlando*, 559 Pa. 112, 739 A.2d 475, 478 (1999). Under Section 1921(c), it is only when the words of a statute "are not explicit" that a court may resort to other considerations, such as the statute's perceived "purpose," in order to ascertain legislative intent. *Id.* Consistently with the Act, this Court has repeatedly recognized that rules of construction, such as consideration of a statute's perceived "object" or "purpose," are to be resorted to only when there is an ambiguity. *O'Rourke v. Commonwealth, Dep't of Corrections*, 566 Pa. 161, 778 A.2d 1194, 1201 (2001) (citing *In re Kritz' Estate*, 387 Pa. 223, 127 A.2d 720, 723 (1956)); *Ramich v. WCAB (Schatz Electric, Inc.)*, 564 Pa.656, 770 A.2d 318, 322 (2001) ("Only when the language of the statute is ambiguous does statutory construction become necessary.") (citing 1 Pa. C.S. § 1921(c)); *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 696 A.2d 148, 150 (1997); *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84, 87 (1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). Finally, all things being equal, the law will be construed liberally in favor of the right to vote but, at the same time, we cannot ignore the clear mandates of the Election Code. *See In re Nomination Petition of Gallagher*, 468 Pa. 19, 359 A.2d 791, 792 (1976) ("we cannot permit a resort to sophistry in an effort to avoid the clear mandates of the Election Code.").

■■ Section 3146.6(a) unequivocally provides that "the elector **shall** send [the absentee ballot] by mail, postage, except where franked, or deliver it in person to the board of

election." 25 P.S. § 3146.6(a) (emphasis added). The word "shall" carries an imperative or mandatory meaning. *See Oberneder v. Link Computer Corp.*, 696 A.2d at 150 ("By definition, 'shall' is mandatory."); BLACK'S LAW DICTIONARY 1375 (6th ed. 1990) ("In common or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command, and one which has always or which must be given compulsory meaning; as denoting obligation. The word in ordinary usage means 'must' and is inconsistent with a concept of discretion."). Thus, under the statute's plain meaning, a non-disabled absentee voter has two choices: send the ballot by mail, or deliver it in person. Third-person hand-delivery of absentee ballots is not permitted.

But appellees argue that, in light of this Court's well-settled practice of construing the Election Code liberally in favor of the right to vote, the word "shall" should be construed as if it were merely directory and not mandatory.[12] Appellees support this proposition by citing this Court's decision in *Wieskerger Appeal*, 447 Pa. 418, 290 A.2d 108 (1972). In *Wieskerger Appeal*, we permitted the counting of absentee ballots that were marked in colors other than those provided for in Section 3146.6(a) of the Election Code, despite the provision's instruction that "the elector **shall** . . . proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink." *See* 25 P.S. § 3146.6(a) (emphasis added). We reasoned that the ballots should be counted because that provision was primarily concerned with preserving the anonymity of the vote, and that the use of colors other than those required by the Election Code would not diminish the secrecy of those ballots. We also noted that the provision "does not . . . specify that any other type of marking will necessarily be void." *Wieskerger Appeal*, 290 A.2d at 109.

■ *Wieskerger Appeal*, of course, was decided before the enactment of the Statutory Construction Act, which dictates

---

**12.** Appellees also argue that it is reasonable to construe the phrase "in person" as permitting a person other than the absentee voter to hand-deliver the ballot. This argument ignores that the provision speaks of options available to the "elector" and thereby confounds the plain meaning of the subsequent phrase "in person."

that legislative intent is to be considered only when a statute is ambiguous. *See* 1 Pa.C.S.A. § 1921(b); *Oberneder,* 696 A.2d at 150 n. 2 (reliance on case for proposition that "shall" may be merely directory depending upon legislature's intent misplaced because case was decided before enactment of Statutory Construction Act). Under the Statutory Construction Act, if the plain language of the statute is unambiguous, we should not seek to avoid the clear command based upon a consideration of perceived intent or purpose. *See* 1 Pa.C.S. § 1921(c); *Oberneder, supra.*

Although some contexts may leave the precise meaning of the word "shall" in doubt, *see* B. Garner, Dictionary of Modern Legal Usage 939 (2d. ed. 1995) ("Courts in virtually every English speaking jurisdiction have held—by necessity—that *shall* means *may* in some contexts, and vice versa"), this Court has repeatedly recognized the unambiguous meaning of the word in most contexts. *See e.g., Oberneder, supra; see also Zone v. Friends Hospital,* 836 A.2d 25, 32 (Pa.2003) ("the verbiage that the documents *'shall* be kept confidential' is plainly not discretionary but mandatory in this context"); *Cranberry Park Associates v. Cranberry Township Zoning Hearing Board,* 561 Pa. 456, 751 A.2d 165, 167 (2000) ("Here, the word 'shall' denotes a mandatory, not permissive instruction."); *Coretsky v. Board of Commissioners of Butler Township,* 520 Pa. 513, 555 A.2d 72, 74 (1989) ("By definition, 'shall' is mandatory."). *Cf. Francis v. Corleto,* 418 Pa. 417, 211 A.2d 503, 509 (1965) (the word "shall [is] usually considered to be mandatory, but it is the intention of the legislature which governs, and this intent is to be ascertained from a consideration of the entire act, its nature, its object and the consequences that would result from construing it one way or the other.").

In Section 3146.6(a), there is nothing to suggest that an absentee voter has a choice between whether he mails in his ballot or delivers his ballot in person, or has a third-party deliver it for him. To construe Section 3146.6(a) as merely directory would render its limitation meaningless and, ultimately, absurd. *See* 1 Pa.C.S.A. § 1922 ("the General Assem-

bly intends the entire statute to be effective and certain."). Moreover, under the principle of *expressio unius est exclusio alterius,* the General Assembly's failure to describe an alternative to mailing or in-person delivery of absentee ballots implies that third-person delivery is forbidden. *See In re Little Beaver Township School Directors' Election,* 165 Pa. 233, 30 A. 955, 957 (1895) ("In so far as the mode of voting is thus specifically prescribed by the act, all other modes are, by necessary implication, forbidden.").

Even if we were to conclude that the meaning of the word "shall" here is ambiguous, requiring consideration of the provision's purpose, *Weiskerger Appeal* is not controlling. Unlike *Weiskerger Appeal,* there is an obvious and salutary purpose—grounded in hard experience—behind the limitation upon the delivery of absentee ballots. The provision at issue limits the number of third persons who unnecessarily come in contact with the ballot and thus provides some safeguard that the ballot was filled out by the actual voter, and not by a perpetrator of fraud, and that once the ballot has been marked by the actual voter in secret, no other person has the opportunity to tamper with it, or even to destroy it. *See Larson v. Locken,* 262 N.W.2d 752, 754 (S.D.1978) ("The purposes of absentee voting statutes are to allow those voters who are unable to attend the polling place on election day for specified reasons the opportunity to exercise their fundamental right of voting; to prevent fraud; and to achieve a reasonably prompt determination of the result of the election."). The provision, thus, is consistent with the spirit and intent of our election law, which requires that a voter cast his ballot alone, and that it remain secret and inviolate. *See* 25 P.S. § 3058(a) ("No voter shall be permitted to receive any assistance in voting unless ... he has a physical disability...."); 25 P.S. § 3060(a) ("No elector shall be allowed to occupy a voting compartment or voting machine booth already occupied by another, except when giving assistance as permitted by this act."); 25 P.S. § 3146.6(a) ("the elector shall, in secret proceed to mark the [absentee] ballot"); *See also Appeal of James,* 377 Pa. 405, 105 A.2d 64 (1954) (Election Code "technicalities" are

necessary for preservation of secrecy and purity of ballot). To ignore Section 3146.6(a)'s clear instructions regarding in-person delivery would undermine the statute's very purpose as a safeguard against fraud.

Appellees further rely upon the Commonwealth Court's decision in *DiPietrae v. City of Philadelphia,* 666 A.2d 1132 (Pa.Cmwlth.1995), *aff'd,* 543 Pa. 591, 673 A.2d 905 (1996), to support the proposition that Section 3146.6(a) is directory and not mandatory. *DiPietrae* is inapposite. There, disabled voters who needed assistance in delivering their completed absentee ballots filed a complaint for declaratory and injunctive relief seeking guidance as to the manner in which they could legally vote by absentee ballot. The trial court granted injunctive relief which, *inter alia,* authorized disabled voters to appoint third persons as agents to deliver completed absentee ballots to the Board of Elections. Affirming the trial court, the Commonwealth Court concluded that the Election Code clearly contemplated delegation in order to facilitate a disabled elector's right to vote.[13] The Commonwealth Court also noted that the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Voting Rights Act, 42 U.S.C. § 1973aa–6, mandate that the rights of the disabled be preserved and facilitated. Thus, the Commonwealth Court held that disabled voters could "select agents to assist them in exercising their right to vote via the absentee ballot process." *DiPietrae,* 666 A.2d at 1136. This Court entered a *per curiam* order affirming the Commonwealth Court. 543 Pa. 591, 673 A.2d 905.

Although we are not bound by the Commonwealth Court's reasoning in *DiPietrae,* even if we were, it would not control here. *DiPietrae* stands for the narrow proposition that disabled voters may receive assistance in completing and delivering their completed absentee ballots to the Board of Elections. The decision in *DiPietrae* was powered by considerations regarding the Election Code's allowance for disabled electors

13. The Commonwealth Court concluded that Section 3146.6(a) permits an agent to assist a disabled elector in making his mark on the declaration for voting by absentee ballot, and that Section 3146.2(e) does not preclude a disabled elector from submitting an absentee ballot application through an agent.

and the necessity to accommodate their voting rights under federal law. Those considerations are simply not present here, and concerns with preventing vote fraud properly prevail. Accordingly, *DiPietrae* does not apply, and we are not compelled to pretend that "shall" means "may" under Section 3146.6(a).

Finally, both appellees and the Commonwealth Court below cite this Court's decision in *Union Electric*, 560 Pa. 481, 746 A.2d 581, for the proposition that absentee voters who delivered their ballots via third-persons were entitled to rely upon the Board of Elections' October 27, 2003 directive, even if that directive was contrary to the law. The reliance upon *Union Electric* to support some general theory of detrimental reliance is misplaced. As discussed *supra*, *Union Electric* involved a party who filed a late appeal in reliance upon a tax board's improper extension of the statutory appeal deadline. The trial court quashed the appeal as untimely and the Commonwealth Court affirmed. This Court reversed and held that an appeal *nunc pro tunc* (literally, "now for then") was appropriate because there was a breakdown in the court's operations through a default of its officers. We noted in *Union Electric* that "[a]llowing an appeal *nunc pro tunc* is a recognized exception to the general rule prohibiting the extension of an appeal deadline." *Id.* at 584. *Union Electric*, thus, is a case involving a jurisprudential doctrine governing judicial filing deadlines.

 No similar "recognized exception" exists that would permit a court to employ a jurisprudential doctrine to defeat a substantive provision of the Election Code. An appeal *nunc pro tunc* " 'is intended as a remedy to vindicate the right to an appeal where that right has been lost to some extraordinary circumstances.' " *Id.* (quoting *Commonwealth v. Stock*, 545 Pa. 13, 679 A.2d 760, 764 (1996)); *see also Appeal of Koch Election Contest Case*, 351 Pa. 544, 41 A.2d 657, 659 (1945) (appeal *nunc pro tunc* appropriate where election board failed to publicly announce result of election and thus prevented candidate from receiving notice in time to appeal). We have held that fraud or the wrongful or negligent act of a court

official may be a proper reason for holding that a statutory appeal period does not run and that the wrong may be corrected by means of a petition filed *nunc pro tunc. See Koch Election Contest,* 41 A.2d at 659. That principle has no application here. The Board of Elections' failure to follow clear substantive provisions of the Election Code does not constitute a breakdown in the court's operations which a court has the power to remedy. Moreover, the position taken by the Board was one which was more likely to invite, rather than remedy, fraud. In addition, that position went to substantive matters—how to cast a reliable vote—and not to a mere procedural matter, such as a filing deadline. Finally, if we were to approve the Board's contra-statutory actions here upon such "equitable" grounds, it would generate a far greater inequity: the uneven treatment of absentee votes throughout the Commonwealth.

 Our precedent is clear: we cannot simply ignore substantive provisions of the Election Code. *See In re Nomination of Gallagher, supra.* We recognize that the Board of Elections' instructions may have misled some absentee voters.[14] But so-called technicalities of the Election Code are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed—particularly where, as here, they are designed to reduce fraud. *See Appeal of James,* 105 A.2d at 65 (election law will be strictly enforced to prevent fraud).

14. We note that there was no testimony or other evidence presented of record which suggested that these absentee voters had third parties deliver their ballots in reliance upon the Board of Elections October 27, 2003 directive. Also, as Judge Leadbetter noted in her dissent, any reliance by voters upon the Board of Elections' directive is not determinative. The Election Code plainly establishes the manner in which absentee ballots must be delivered to the Board of Elections. Section 2642(f) of the Election Code provides that Boards of Elections have limited authority to "make and issue such rules, regulations and instructions, **not inconsistent with law**...." 25 P.S. § 2642(f) (emphasis added). Further, the printed instructions prepared by the Pennsylvania Secretary of the Commonwealth and issued with the absentee ballots plainly explained that voters should "mail or deliver in person" their ballots.

For the forgoing reasons, we hold that Section 3146.6(a)'s "in person" delivery requirement is mandatory, and that the absentee ballots of non-disabled persons who had their ballots delivered in contravention of this mandatory provision are void. *See American Labor Party Case*, 352 Pa. 576, 44 A.2d 48, 49 (1945) (act done in violation of mandatory provision is void).[15] Accordingly, we reverse the Commonwealth Court's judgment in so far as it held that the fifty-six absentee ballots delivered on behalf of non-disabled absentee voters in violation of Section 3146.6(a) are valid.

We further note our reservations concerning the Board of Elections' decision to void sixteen valid ballots simply because they were inadvertently commingled with two problematic ballots. Because our holding today is limited to the issue upon which this Court granted allocatur—the validity of those ballots hand-delivered by third persons—we do not address the lower courts' disposition concerning the eighteen commingled and "tainted" ballots.[16]

Justice BAER did not participate in the consideration or decision of this matter.

Justice SAYLOR concurs in the result.

15. Because we hold that Section 3146.6(a) is mandatory, we need not address the issue of whether counting the ballots in violation of that provision would violate the Equal Protection Clause.

16. Since the Commonwealth Court held that the third-party-delivered absentee ballots were valid, it did not reach the separate question of whether the two suspect ballots that had been inadvertently commingled with sixteen valid ballots rendered all eighteen of those ballots invalid. Further, because appellees did not cross-appeal the Commonwealth Court's determination as to the ballot of Rydzak, we also do not pass upon the validity of that ballot.